# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | Morton Denlow |
|---|---|---|---|
| **CASE NUMBER** | 00 C 669 | **DATE** | 1/16/2003 |
| **CASE TITLE** | David Mielke, et al. vs. Laidlaw Transit, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For reasons stated in the attached Report and Recommendation, it is recommended that Laidlaw's objections to the opt-in plaintiffs are sustained in part and overruled in part.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | JAN 17 2003 | 106 |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | 1/16/2003 | |
| | | date mailed notice | |
| DK | courtroom deputy's initials | DK mailing deputy initials | |

Date/time received in central Clerk's Office

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DAVID MIELKE, et al., ) | |
| ) | Case No. 00 C 0669 |
| Plaintiffs, ) | |
| ) | |
| v. ) | Magistrate Judge Morton Denlow |
| ) | |
| LAIDLAW TRANSIT, INC. ) | |
| ) | |
| Defendant. ) | |

TO: THE HONORABLE RUBEN CASTILLO
UNITED STATES DISTRICT JUDGE

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

This case has been referred to this Court for a Report and Recommendation on Laidlaw Transit's objections to the opt-in plaintiff's in this action. Laidlaw Transit ("Laidlaw") has objected to the opt-in plaintiffs on several grounds: 1) entries are duplicative, 2) Laidlaw has not received the opt-in forms, 3) opt-in forms are untimely, 4) opt-in plaintiffs were not on notice list, 5) the opt-in form was not stamped by the Clerk of the Court and is therefore untimely, 6) opt-in plaintiff withdrew his opt-in, and 7) opt-in plaintiff was not a school bus driver. For the reasons stated below, Laidlaw's objections are sustained in part and overruled in part.[1]

---

[1] The Court's recommendations are made based on Laidlaw's description of its objections. If a potential plaintiff falls into more than one of Laidlaw's objections, the plaintiff should be permitted to participate if he qualifies. In reviewing this matter, the Court sees no prejudice to Laidlaw if the entire class of potential plaintiffs is allowed to have their case decided

## II. BACKGROUND

David Mielke, Barbara Boyer, Astella Goad, Mary Ann Schmieder, Karen Harnew, Mildred Jensen, Michelle Trahan, and Gesualda Densford (collectively "Mielke" or "Plaintiffs") filed a complaint on February 2, 2000 on behalf of themselves and other similarly situated employees pursuant to 29 U.S.C. § 201 *et seq.*, the Fair Labor Standards Act ("FLSA") to recover unpaid over-time wages against Laidlaw. Plaintiffs were employed as school bus drivers for Laidlaw in its Schaumburg, Illinois office.

Plaintiffs allege that while employed at Laidlaw, they were compensated at an hourly rate, as defined in the FLSA. In addition, the Plaintiffs often worked in excess of forty hours per week, while not being paid overtime wages (one and one-half times the regular rate) as required by the FLSA, 29 U.S.C. § 207 (a)(1), until Laidlaw changed its policy in July 1999.

The suit included a class allegation under 29 U.S.C. § 216(b). The potential class was identified as "any and all employees who, at any time within three (3) years preceding February 1, 2000: (a) were employed at any Laidlaw Transit, Inc. facility as a school bus driver; and (b) actually worked more that forty (40) hours in a workweek; and (c) received a rate of pay less than time and one-half of their regular rate of pay for hours worked in excess of forty (40) in a workweek[.]" Defendant's Ex. J (opt-in notice sent to potential plaintiffs). In March of 2002, the district court found that Plaintiffs identified "potentially similarly situated school bus drivers" and ordered notice to be immediately issued to more

---

on the merits. However, this Court is guided by the referral, and the Report and Recommendation attempts to answer the issues raised.

than 6,000 school bus drivers employed by Laidlaw at 160 branches. Order of Judge Castillo, March 15, 2002. The court ordered that Laidlaw's proposed notice (not Plaintiffs') be used and noted that the order in no way guaranteed that the class would be certified. *Id.*

According to Plaintiffs, within forty-five days of the court's decision on March 15, 2002, they issued the first set of notice mailings. Plaintiffs further explain that Laidlaw's electronic payroll records and its electronic name and address records lacked a common identifier data field. Plaintiffs employed a consultant to match the names of the 6,000 potential claimants with Laidlaw's list of 70,000 current and former school bus drivers. By mid-April, Plaintiffs had completed two-thirds of this task and provided that list to its mailing facility. Plaintiffs could not identify valid addresses for the remaining one-third of the potential claimants and asked Laidlaw to supply a last known address for each one. This took some time for Laidlaw to complete, and the notice was not mailed to these potential claimants until June 13, 2002 in some cases.

All notices, regardless of the mailing date, contained a return deadline of June 30, 2002. The notices were to be returned to the Clerk of the Court of the Northern District of Illinois and were to be stamped by the Clerk with the date of receipt. Unfortunately, the Clerk did not consistently stamp the notices when they were received. Some were stamped on the envelope, some on the back of the consent form, some on the front, and some not at all. After the forms were received they were periodically delivered to Judge Castillo's chambers where Plaintiffs retrieved them. Most of the consent forms were received by the

deadline; however, a good many of them were stamped as received after the June 30, 2002 deadline. In addition, consent forms were received from people who were not on the original list of 6,000 potential class members identified by Plaintiffs.

At a proceeding before Judge Castillo on September 26, 2002, Plaintiffs indicated that the deadline on the opt-in forms of June 30, 2002 was indicated primarily for the purpose of encouraging the potential class members to respond quickly. Defendant's Ex. A (Transcript of proceedings before Judge Castillo, September 26, 2002) at 3. Judge Castillo responded and Plaintiffs' counsel agreed that there was a firm opt-in date of June 30. *Id.* at 3-4. Judge Castillo then stated: "Whoever makes it, makes it. Whoever doesn't, doesn't. That's a firm date." *Id.* at 4.

Judge Castillo then referred the case to this Court on Spetember 27, 2002 to resolve the issues regarding the opt-in participants in this case. This Court will discuss each of Laidlaw's objections in turn.

### III. DISCUSSION

In its First Amended Objections to Plaintiff's Final List of All Opt-In Participants, Laidlaw identifies seven objections to particular opt-in Plaintiffs, each of which will be discussed in turn. Laidlaw objects to seven groups of potential opt-in plaintiffs for the following reasons: 1) Plaintiff's entries are duplicative, 2) Laidlaw has not received the opt-in forms, 3) opt-in forms are untimely, 4) opt-in plaintiff was not on notice list, 5) the opt-in

form was not stamped by the Clerk of the Court and is therefore untimely, 6) opt-in plaintiff withdrew his consent, and 7) opt-in plaintiff was not a school bus driver. This Court will address objections one, two, six, and seven in a summary manner and then address the more substantive issues contained in objections three, four, and five.

### A. Objection One - Plaintiff's Entries Are Duplicative

Laidlaw objects to four of Plaintiffs' potential opt-ins because they are listed more than once on Plaintiff's opt-in list. For instance, James Edward Arnold is listed as number sixteen on the opt-in list. He is also listed as James Arnold with the same address under number seventeen on the list. The second listing is duplicative and should be omitted. The three other potential plaintiffs objected to under this category suffer from similar problems (i.e. Alice M. Burletic, Renee Finley, and Susan C. Lis). Plaintiffs agree in their response that *bona fide* duplicates should be withdrawn. The duplicative listing of each should be omitted from the opt-in list.

### B. Objection Two - No Opt-In Forms

Laidlaw's second objection is that Plaintiffs have not provided Laidlaw with copies of the opt-in forms once they received them. No opt-ins are listed under this category. In addition, Laidlaw admits in its reply that this issue is moot since Plaintiffs provided Laidlaw with all missing opt-in forms. This objection is dismissed as moot.

### C. Objection Six - Opt-In Withdrawn

Laidlaw's sixth objection states that Steven C. Duncan should be removed from the

opt-in list because he submitted a letter requesting his withdrawal from the class of Plaintiffs. Mr. Duncan wrote a brief letter to Larry Besnoff, an attorney for Laidlaw, dated September 8, 2002 stating that he wished to be removed from the suit. Defendant's Ex. O. Plaintiffs agree in their response that *bona fide* withdrawals should be omitted from the opt-in list. This Court finds that Steve C. Duncan intended to be withdrawn from the class and should be omitted from the class of Plaintiffs.

In addition, although not specifically raised by either party, this Court addresses the opt-in form of Mary E. Wheeler. Mary Wheeler is included on Plaintiff's list of opt-in plaintiffs dated November 1, 2002 and on a list of opt-ins dated December 2, 2002. Laidlaw does not address Wheeler's entry in its brief, but includes a copy of her opt-in form in its packet of exhibits. Wheeler did not sign the opt-in form but filled in her name, address, and other contact information. She also included a hand-written note on the form indicating: "I received time and one-half when I worked over 40 hours. I have no participation [sic] Mary Wheeler /s" Defendant's Ex. N. This Court finds that her opt-in form clearly indicates that she does not want to be a member of the plaintiff class and she should be omitted from the list of opt-in plaintiffs.

### D. Objection Seven - Not a School Bus Driver

Laidlaw objets to class plaintiff number 261, Mary S. Hernandez-Martinez, because she identified herself as a bus attendant and not a bus driver. Laidlaw presents no evidence in its exhibits that she in fact did identify herself as such. However, this Court finds that to

the extent that she is or was a bus attendant and not a driver, she fits in neither the description of the class identified in the notice, Defendant's Ex. J, nor within Judge Castillo's description in his order to serve notice on the potentially similarly situated school bus drivers of March 15, 2002. He ordered "notice to immediately issue at Plaintiff's expense to the 6,038 individual *drivers* from 160 Laidlaw branches." Order of Judge Castillo, March 15, 2002 (emphasis added). Mary S. Hernandez-Martinez should be omitted from the Plaintiffs' opt-in list, absent confirmation that she was a bus driver during the class period.

**E. Objection Five - Untimeliness due to absence of a post mark or stamp by the Clerk**

Laidlaw's fifth objection argues that seven potential plaintiff's should be omitted because there is no postmark on the envelopes, nor is there a stamp from the Clerk of the Court. Plaintiffs' proposed form of notice to be sent to potential opt-in claimants indicated that the potential plaintiff should mail the response to the Plaintiffs' attorneys. Laidlaw objected to this form of notice and specifically argued that the forms should be returned to the Clerk of the District Court. Defendant's Memorandum In Opposition To Plaintiffs' Proposed Notice Of Class at 3-4. In his March 15, 2002 order, Judge Castillo accepted Laidlaw's form of notice which was then sent to potential plaintiffs indicating that it was to be returned to the Clerk of the Court by June 30, 2002. This provided a neutral and fair method of returning the forms which would also provide for assurance that the form was received by the correct deadline. *See Garcia v. Elite Labor Serv. Ltd.*, No. 95 C 2341, 1996 U.S. Dist. LEXIS 9824, at *15-*16 (N.D. Ill. July 11, 1996) (recommending that the opt-in

forms in an FLSA case be sent to the Clerk of the Court to avoid controversy over filing dates).

Under this plan, the postmark on the envelope is irrelevant. Only the date of the Clerk's stamp indicating that the consent form was received by the deadline is relevant to either party in this dispute. Here, where the Clerk of the Court failed to stamp any part of the consent form (including the envelope), the system proposed by Laidlaw failed to meet its goal.

The failure of the Clerk, acting upon Laidlaw's approved plan, can not be held against the potential plaintiffs in this action. The potential opt-in plaintiffs whose substantive rights are at issue should not be punished for the failure of the notice plan. Laidlaw does not argue, nor could it, that it suffers any prejudice by these potential plaintiffs being admitted into the action. Furthermore, the court's interest in the efficient resolution of disputes and to avoid the multiplicity of actions regarding substantially the same facts and legal issues, this Court recommends the seven opt-in plaintiffs whose forms lack a post mark or a stamp by the Clerk of the Court should remain in the action.

### F. Objection Three - Untimely Opt-In Forms

Laidlaw objects to seventy-five opt-in forms received after the June 30, 2002 deadline. Plaintiffs assert that the deadline for opt-in forms was chosen to encourage the potential plaintiffs to send in their forms in a timely manner, but did affirm in open court that it was a firm date. In addition, Laidlaw argues that Plaintiffs should be held to that deadline since

they chose it themselves without the input of the court or Laidlaw. While the deadline for sending in opt-in forms was not addressed by the court in this case, other cases have addressed this issue and place deadlines on the time for opt-ins to be received.

For instance, in *Garcia v. Elite Labor*, the court recommended a that the notice be returned within 90 days of its sending, for a person to validly opt-in to the suit. No. 95 C 2341, 1996 U.S. Dist. LEXIS 9824, at *14-15 (N.D. July 12, 1996). The Report and Recommendation of the Magistrate Judge was adopted in full by the district court. 1996 WL 559958, at *2 (N.D. Ill. Sept. 30, 1996). The plaintiff requested a 180-day response time for the opt-in plaintiffs because the potential plaintiffs were low income workers who moved frequently and many of them did not speak English. 1996 U.S. Dist. LEXIS 9824, at *14. Considering these factors, the court found that 60 days would be too short a response time and 180 days was too long. *Id.* at *14-*15. Thus, it recommended 90 days. *Id.* In addition, in *Sperling v. Hoffmann-LaRoche, Inc.*, the court imposed a 45-day deadline for receipt of the opt-in forms in an ADEA class action. 118 F.R.D. 392, 404 (1988). Finally, in *Allen v. Marshall Field & Co.* the court allowed a 33-day deadline for the return of opt-in forms in an ADEA class action where all potential plaintiffs were in the Chicago region. 93 F.R.D. 438, 440, 450 (1982).

Although, not addressed by the district court when it approved the sending of notice in this action, this Court recommends that a 45-day response time was adequate in this case. Forty-five days was sufficient, recognizing that the potential class involved 160 branches of

Laidlaw's offices and required notice to be sent nationwide. Given Plaintiffs representation of the quick response time of most potential opt-ins, 45 days was sufficient.

Having found a workable deadline, this Court finds that the delay in getting the notices out is due to the fault of both parties. According to Plaintiffs, after Judge Castillo issued the order approving notice, they had a difficult time matching the database of names of potential plaintiffs with their addresses. Once two-thirds of the matching was complete, they sent the notice out on May 3, 2002. The first batch was sent a full 45 days after Judge Castillo's order. Because they did not have addresses for the remaining one-third of potential opt-ins, Plaintiffs returned to Laidlaw to ask for the addresses. It took some time for Laidlaw to match the addresses, and this second batch of notices were not mailed until June 13, 2002. Laidlaw bears some of the blame for providing databases that could not be cross-referenced and not providing Plaintiffs with a complete database of the addresses of its employees. However, Plaintiffs had the database information for fifteen months and waited to do the name and address matching until after the district court approved the notice.

This Court makes its recommendations based on the following considerations. First, Laidlaw objects to the inclusion of these plaintiffs because they missed the opt-in deadline, a procedural violation. Laidlaw has not argued that it suffers prejudice from these plaintiffs being opted-in to the action, and this Court finds that Laidlaw suffers no prejudice. Second, this litigation has been drawn out for a two-year period and the class of potential plaintiffs has still not been decided. Whether this is due to the fault of the Plaintiffs or Laidlaw, is

unclear, but in the interest of the efficient resolution of disputes, the parties must proceed with the case.

First, the opt-in plaintiffs whose notice was mailed by Plaintiffs on May 3, 2002, in other words, the first group of two-thirds of plaintiffs, had more than the sufficient 45 days to respond to the notice. These plaintiffs should not be permitted to opt-in if their consent was received by the Clerk of the Court after June 30, 2002. Second, the potential plaintiffs whose notice was mailed on June 13, 2002, the second group, should be given a full 45 days to opt in. Thus, any consents received from the second group through July 28, 2002 should be considered timely and permitted to opt in to the class. Any consent forms received after that date should not be permitted to enter the class.

This Court makes this recommendation based on the representations of both parties, the Court's desire to see disputes resolved on the merits, the court's desire to avoid multiplicity of lawsuits, the protracted nature of this litigation, and the lack of prejudice Laidlaw faces by having these potential plaintiffs added to the lawsuit.

### G. Not on Notice List

Laidlaw's final objection to the potential plaintiffs is that forty-three who sent in opt-in forms were not on the notice list and were not sent an opt-in form. Laidlaw argues that because these people were not identified as opt-in plaintiffs by the Plaintiffs when they analyzed Laidlaw's data to determine who may or may not have a claim, they should not be included. The argument follows that since they were not identified as having a claim by

Plaintiffs, they should not be permitted to recover in a suit for overtime wages. Plaintiffs respond, first, that nine of the potential plaintiffs are on the address lists for the original notice, and second, thirty-eight appear on Laidlaw's original list of employees. While it may be true that thirty-eight were on the original employee list, Plaintiffs' analysis of the list did not indicate that these people were potential plaintiffs.

Regarding the nine disputed potential opt-ins who Plaintiffs claim were on the original notice list, Laidlaw withdrew this objection in its reply, conceding that these names were included in the original list. In reference to the others who were not on the list of potential plaintiffs, but who submitted consent forms (copied or obtained from someone on the list), the Court recognizes that claimants may find out about an action via other means. For instance, in *Allen v. Marshall Field Co.*, the defendant argued that notice should not be sent out because all of the potential plaintiffs lived in the same area and were informed about the suit from two newspaper articles and a television show. 93 F.R.D. 438, 443 (1982). This Court recommends that the remaining opt-in plaintiffs falling under this objection, be admitted to the class to have their case decided on the merits. If they are class members, how they received notice is irrelevant.

## IV. CONCLUSION

Laidlaw's objections to the opt-in plaintiffs are sustained in part and overruled in part. Duplicative entries on the opt-in list should be eliminated. Opt-in plaintiffs who withdrew

their consent should also be eliminated from the class. People who returned consent but are not bus *drivers* should be eliminated. Potential plaintiffs whose opt-in forms lack a postmark or clerk stamp should remain in the class. The opt-in plaintiffs whose forms were not received by Laidlaw objection is dismissed as moot.

Finally, realizing that Judge Castillo stated in open court that the June 30, 2002 deadline was a firm date, this Court respectfully recommends that opt-in plaintiffs whose form was sent in the second batch (June 13) and whose form is stamped on or before July 28, 2002 should remain in the class. Those whose form is stamped after July 28, 2002 should be eliminated. Opt-in plaintiffs who were not on Plaintiffs' original list of potential opt-ins should be admitted to the class assuming their forms were timely submitted under the above rulings.

Respectfully Submitted,

_____
MORTON DENLOW
United States Magistrate Judge

**Date: January 16, 2003**

Any objections to the Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the Magistrate Judge's Report and Recommendation. *See* Fed. R. Civ. P. 72(b); 28 U.S.C. 636(b)(1)(B); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 329 (7th Cir. 1995); *The Provident Bank v. Manor Steel Corp.*, 882 F.2d 258 (7th Cir. 1989).

**Copies mailed to:**

Eugene W. Beeler, Jr.
Steven J. Tomiello
BEELER, SCHAD & DIAMOND, P.C.
332 South Michigan Ave.
Suite 1000
Chicago, IL 60604
(312) 939-6280

Dennis Ray Favaro
Andrew H. Haber
THILL, FAVARO, BUZEK & GORMAN, LTD.
835 North Sterling
Suite 100
Palatine, IL 60067
(847) 934-0060

Kenneth Alan Runes
RUNES LAW OFFICES
800 West Central Road
Suite 104
Mount Prospect, IL 60056
(847) 222-0600

Attorneys for Plaintiffs

Chad W. Moeller
ALTHEIMER & GRAY
10 South Wacker Dr.
Suite 4000
Chicago, IL 60606
(312) 715-4000

Jason E. Reisman
Todd J. Glassman
Larry Besnoff
William J. Leonard
OBERMAYER, REBMANN, MAXWELL,
& HIPPEL, LLP
One Penn Center, 19th Floor
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103-1895
(215) 665-3000

Attorneys for Defendant